## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**COREY MOORE**
*also known as*
*Corey Patrick Moore*                                    **PETITIONER**

**V.**                                    **CASE No: 3:21-cv-00459-KHJ-BWR**

**WARDEN UNKNOWN PORTILLO**                        **RESPONDENT**


## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [1] filed *pro se* by Petitioner Corey Moore who challenges his 2017 conviction and sentence for burglary of a dwelling and sentence as a habitual offender to serve twenty-five years (25) in the custody of the Mississippi Department of Corrections. Respondent Warden "Unknown" Portillo filed an Answer [9] to Moore's Petition [11]. Moore filed a Traverse and Request for an Evidentiary Hearing [11]. Respondent filed an Opposition [13] to the request for an evidentiary hearing that also challenged the arguments in Moore's Traverse. Moore's request for an evidentiary hearing was denied. Having considered the submissions of the parties, the record, and relevant law, the undersigned concludes that Moore's Petition [1] should be dismissed with prejudice because the claims either have no merit or are procedurally defaulted.

# I. BACKGROUND

In January 2015, Moore was indicted in the Circuit Court of Hinds County, Mississippi, of burglary of the dwelling of Nita McGee[1] which occurred on August 23, 2014 in violation of Mississippi Code Annotated 97-17-23. [10-1] at 7. Moore was declared indigent, and on May 19, 2015, an attorney was appointed to represent him at trial. *Id.* at 12-13. Trial was initially set to occur on June 5, 2015 but did not occur until June 5, 2017. *Id.* at 10. Thirteen days before trial, on May 24, 2017, the prosecution moved to amend the indictment to reflect that Moore was a habitual offender under Mississippi Code § 99-19-81. *Id.* at 28-29. This amendment meant that if Moore was convicted, he was to "be sentenced to the maximum term of imprisonment prescribed for such felony," which for the crime charged was twenty-five years. Miss. Code. Ann. § 99-19-81. [10-2] at 8-9.

On Monday, June 5, 2017, when trial was called, Moore was not in the courtroom. *Id.* at 7. The trial judge asked Moore's appointed trial counsel if Moore knew that his trial was starting, and counsel responded that he had "spoke[n] with him Saturday and told him the date and time to be here." *Id.* Counsel asked the judge for a continuance to discuss a plea with the prosecutors, complaining that Moore was not originally indicted as a habitual offender and the plea deadline passed before the indictment was amended, with no plea having been discussed. *Id.* at 8-11. The prosecution responded that no plea offer was required. *Id.* at 10. The trial judge took the defense's motion for continuance under advisement. *Id.* at 11.

---

[1] At the time of the burglary, the victim's name was Nita Cornelius.

On June 6, 2017, Moore was present when trial was called. Trial counsel told the judge that Moore wished to address the court. Moore was given leave and told the judge:

> This is the first time I've laid eyes on my public defender since he's been assigned to me. I've only talked to him, like, three times. I only found out about me having to be here in court yesterday – Saturday. He called me last Saturday to tell me about today. Only reason why I knew it was him today is because I recognized his voice from talking with him. But we haven't discussed the case. I mean, and I been trying to go ahead and get my own money so I can prepare for my own defense. Because, I mean, he don't – I mean, we haven't talked about anything.

*Id.* at 13.

The trial judge gave Moore's counsel an opportunity to respond, and counsel stated:

> And just for the record, Your Honor, the last time he contacted me was via telephone, was to tell me that he was firing me, gonna get his own lawyer. And, you know, nobody has ever been – filed any entry of appearance and no order has been signed. So I've been telling Mr. Moore that unless you sign an order, I'm still on the case as far as I know. But he is correct, this is the first time we have met. But it's not due to any fault of my own.

*Id.* at 14.

The trial judge concluded that trial would continue, and Moore again asked to speak. Given leave, he stated:

> I'm a veteran. I was in the United States Army. I been shot five times, I've been diagnosed with PTSD. The meds they got me on – that's what I brought here today, you know. And literally, and like I said, I don't even feel comfortable. He don't know nothing about me. I mean, I just don't feel comfortable sitting here. I mean, this is my life. And then he telling me this 25 years, they trying to charge me as a habitual. And for

3

me to just get bumrushed into this, I mean, he don't know nothing about me. Nothing. He don't even know my medical condition.

*Id.* at 17-18.

Moore's trial counsel responded that

Once again, Your Honor, he is correct that this is our first time meeting. This is not my first time talking to this individual and trying to request a meeting. He's always had a reason for not meeting me; including him being at the VA for a few months last year about being diagnosed with PTSD. He even had a letter from his caseworker at that time saying that. Mr. Moore, as I said to the Court before, has called me a couple of times. We have talked on the phone more than once. Mr. Moore has told me a couple of times that he was hiring his own attorney and that he wanted to fire me, and he's never done anything to try to do that. So I just don't know what else I'm supposed to do here, Your Honor. I've tried. He's right, we don't know each other, we haven't actually had a sit down and discuss[ed] the case. But again, I don't believe that's due to anything that I've done wrong.

*Id.*

The trial judge denied the defense's motion to continue the trial, finding that

[i]t's apparent Mr. Lockhart has attempted to discuss the case with Mr. Moore, who has related to Mr. Lockhart that he intended at some point to hire an attorney – which he never did. So we're here today. Mr. Moore's been aware the case has been set for trial for quite some time, and we're going to proceed with the trial. So we'll take a 5-minute comfort break.

*Id.* at 19.

During the comfort break, Moore left the courthouse and did not return. *Id.* at 19-20. His counsel called him on his cell phone, the call went to voicemail, and counsel left Moore a message stating that trial was going forward, and Moore needed to be there. *Id.* at 21, 138. When the judge was told this, he stated, "Well he was here, he

knew we were about to start *voir dire*, he was sitting at the counsel table. And so we're going to proceed." *Id.*

The remainder of June 6, 2017 was spent picking a jury. When the case was called on June 7, 2017, Moore's counsel informed the judge that he had been contacted by attorney Robyn Teague who told him that Moore had contacted her on June 6 about representing him. *Id.* at 133. Teague was present and explained to the judge:

> Your Honor, first of all Mr. Moore is – I never entered my appearance on this case. And he did make contact with me in about 2015. He started paying on a retainer, never finished. He's got mental issues. When I met him he was – he escaped from, or he left – I'm not gonna say escape. He left the VA Hospital. And he was getting treatment then for psychiatric condition.

*Id.* at 134.

The judge asked Teague how she knew that Moore had been in the psychiatric ward, and she stated that Moore's mother and Moore had told her, but she had not independently verified that information. *Id.* at 134-35. Teague stated that "from the last 24-hours communication with him – I'm not a medical professional – but common sense tells me that he's not stable at all. And I think he's dangerous. And he's not in his right mind; I do know that." *Id.* at 136. The judge asked Teague, "Are you representing him currently?" *Id.* at 136. Teague answered, "I'm not. But I think in his mind he thinks that I am. I don't – I mean if I have to I will. But, I mean, I'm not prepared to." *Id.* at 136-37. The judge asked Teague whether Moore knew that trial would continue in his absence, and she stated yes, she had told Moore on June 6 that the trial would go forward whether he attended or not. *Id.* at 137. The judge released Teague. *Id.* at 141.

The judge and Moore's counsel had the following exchange:

The Court:   Mr. Lockhart, you've represented him for a while. And I note at no time did you file a motion to have a mental exam done. Could you comment on that?"

Counsel:     [ ] I've had phone conversations with this individual on several occasions. And every time I've suggested – I've tried to get him to actually meet with me face to face – he said some kind of reason for why he won't me[e]t with me or why he couldn't meet with me or whatever. So over the phone, I've never detected anything over the phone where he had any kind of mental issues. And then at some point last year, I don't remember the exact date, I did get a letter from his VA worker that he's at their facility, and he's been diagnosed or getting treatment for PTSD. But again --

The Court:   Was that recently or was that a long time ago?

Counsel:     No, that was – it would have had to have been early part of last year, like, January or February or something like that of last year.

The Court:   And since you got that letter, you've talked to him on the phone several times; you haven't noticed any mental instability?

Counsel:     Since I got that letter – he last contacted me, my phone records show it was, like, in February of last year. Where he said – he left a message on my voicemail for me where he said he was hiring another attorney, and thank you for what all you've done for me but I got another lawyer representing me. And then I sent something back to him – returned the call back to him saying, if you've got another lawyer, that lawyer needs to file the appropriate paperwork. That was like I said, sometime in, like, in February last year. The last time I did call him – and I remember that from the number that I had – was, like, in April of last year and I left him a message. It was basically about us having a new court date and you need to have your new lawyer, if you have one, file the paperwork. I haven't had any contact with him since February of last year. But we had talked several times before then. And like I said, every time I talked to him on the phone, I mean, he seemed competent over the telephone.

*Id.* at 139-40.

The trial judge concluded that

[Moore] was here until five minutes before jury selection yesterday sitting at that counsel table. I announced that we were about to bring the jury in to try his case. He had absolutely no doubt, that he knew that his trial was five minutes away. We took a comfort break, a short one; when we returned, he was gone. He left some personal effects on the table. And on report of his counsel he had left the courthouse. He hadn't been back since. His absence is clearly willful, voluntary, and deliberate. And I'm finding that he's aware of his trial. And relying on [Mississippi Code Annotated §] 99-17-9, I'm going to find that he's waived his right to be present at the trial, and I'm going to order the trial to proceed in his absence.

*Id.* at 141-42.

The prosecution put on its case, presenting three witnesses: Detective Paul Hobson, who investigated the incident on behalf of the Jackson Police Department; Officer George Jimmerson, a Jackson Police Department officer and the ex-husband of the victim Nita McGee; and Nita McGee. The trial testimony showed that on August 23, 2014, McGee was staying with her parents while recovering from surgery. [10-3] at 42. She was not staying at her home that she rented and lived in with her daughter, who is also the daughter of Officer Jimmerson. *Id.* at 11, 42. Officer Jimmerson drove their daughter to McGee's house on August 23, 2014 to pick up items and saw an unknown utility vehicle in McGee's driveway. *Id.* at 11. A later police investigation revealed that the utility vehicle belonged to Moore's mother, and items belonging to McGee and her daughter were found in the vehicle, including a clarinet, paintings, clothing, bedding, an air mattress, and air pump. *Id.* at 31-32; *Moore*, 287 So. 3d at 195.

When Officer Jimmerson saw the unknown vehicle, he called McGee and alerted her and then called the police. [10-3] at 11-12. McGee arrived quickly. *Id.* at 11. Officer Jimmerson testified that while waiting for the police to arrive, he

> check[ed] the perimeter on the outside. I went back to the garage area where that vehicle was, and I saw the storage-room door open. And once I kind of peeped inside the storage room, I observed a man in the corner; tall, kind of dark skin fellow, and he had on a white T-shirt. I immediately drew my weapon and I shouted to him, come out, come out. And when he came out outside the garage area, I immediately put him on the ground and held him [until] the other officers arrived.

*Id.* at 12.

McGee came to the area where Officer Jimmerson was holding the man and saw that the man was Moore, a person she knew mostly through her job. *Id.* at 13. McGee worked as a mental health nurse practitioner at the Jackson VA Medical Center, and Moore had been a mental health patient there for an extended period. *Id.* at 23, 27-28. Though Moore was not McGee's patient, she got to know him because sometimes she allowed him to use her office for a "quiet time" program, she saw him at her uncle's church, she once gave him money for his child's uniform, and she once paid him to help her move a large piece of furniture into her home. *Id.* at 28-30, 33, 36-38, 39, 42-49. While McGee was away from work and recovering from surgery, Moore contacted her frequently through voicemail and text to check on her. *Id.* at 42-43. McGee stated that other veterans had also done so. *Id.* at 42-43. McGee testified that she did not give Moore permission to be at her home or take her property. *Id.* at 32-33. According to the defense, Moore had permission to be at McGee's home because "they were in a dating relationship." [10-2] at 147.

When the prosecution rested, Moore's trial counsel moved for a directed verdict that was denied. [10-3] at 56-60. The trial judge read the jury instructions, and counsel presented closing arguments. The jury returned a verdict finding Moore guilty of house burglary. [10-1] at 47; [10-3] at 101.

Moore was arrested on a bench warrant and appeared for sentencing on October 17, 2017. At sentencing, Moore asked to speak to the judge and stated:

> First of all, I want to apologize to the Court for running out. I just had a lot going on mentally-wise, but I'm not a criminal, Your Honor. I served my country in '91. I went to Iraq. And when I came back from Iraq, I started using drugs real heavy and both of my convictions are, you know, for possession. I mean, I'm a drug addict. That's the only thing I know I'm guilty of. I mean, this house burglary. . . . I was in the army, yes, sir. In the army, 13th (inaudible) Field Artillery. And ever since I came back from over there, things just haven't been the same in my life, you know, and I self-medicate. I turned to drugs and alcohol. And I'm not making no excuses for it, but I haven't been the same in over 20 something years. And for me to be brought up on these charges that I'm on now, it's unfair because I didn't do the house burglary. I – I didn't do it. Me and the lady was dating. She got mad. . . . I'm just – you know, this is —I'm looking at 25 years. . . . I went to treatment on the 7th of August. After I left court, I went to treatment, you know, so I've been clean since the 7th of August.

[10-3] at 110-12.

The judge ruled

> Mr. Moore, you were convicted of house burglary back in June. . . . You remember it. You came for a little bit of the trial and then all of a sudden you were gone. . . . And you explained you had a lot on your mind and I understand that. At any rate, 12 of your fellow Hinds County citizens found you guilty. Mr. Lockhart did the best job he could do without you being here.

*Id.* at 113-14.

Moore was sentenced as a habitual offender to serve 25 years without eligibility for parole. [10-3] at 116; [10-9] at 335. Through appointed appellate counsel, Moore directly appealed his conviction and sentence to the Mississippi Supreme Court. The Mississippi Supreme Court affirmed Moore's conviction and sentence in a published opinion and denied his motions for reconsideration and rehearing. *See Moore v. State*, 2018-KA-00121-SCT, 287 So. 3d 189 (Miss. 2020); [9-2], [9-3].

Moore was not entitled to appointed counsel on state habeas review. Proceeding *pro se*, he filed an "Application for Leave to Proceed in the Trial Court of Hinds County Mississippi" requesting habeas relief. [10-7] [10-8] [10-9]. His postconviction review motion (PCR Motion) consisted of three volumes of documents totaling over 900 pages. *Id*. Moore wrote on the PCR Motion that "the inclosed [sic] is the PCR Petitions are all of one post-conviction separate issues please read together." [10-8] at 224. The Mississippi Supreme Court summarily denied Moore's PCR Motion, finding "that the issues raised do not demonstrate a 'substantial showing of the denial of a state or federal right[.]'" [9-4] (quoting Miss. Code Ann. § 99-39-27(5)). No further reasoning was provided, and Moore's motion for rehearing was denied. [9-5].

Moore, proceeding *pro se,* filed the instant 28 U.S.C. § 2254 Petition in this Court seeking federal habeas corpus relief. Respondent has accurately summarized Moore's claims into the following categories for easier reference:

Ground One:     Ineffective assistance of trial counsel for failing to:
                (a) object to blatant subornation of perjury;

     (b) investigate serious mental illness and hospitalization of Moore;

     (c) request a competency hearing;

     (d) request a circumstantial evidence and/or lesser included offense instruction; and

     (e) object to Moore's trial in absentia while competency was unestablished.

**Ground Two:** Ineffective assistance of appellate counsel for failing to:

     (a) raise subornation of perjury and State's misconduct of citing the perjury in closing argument;

     (b) challenge trial in absentia when Moore's competency was in question;

     (c) question the impact of perjury subornation on jury instructions; and

     (d) argue that Moore's conduct was, at most, mere trespassing under Mississippi statutory and common laws.

**Ground Three:** Due process violation based on subornation of perjury and/or prosecutorial misconduct, alleging "after announcing the state rest, the prosecutor recalled a witness that had earlier testified he found petitioner outside of the house. In a leading question, the prosecutor 'reminded' the witness that he had found petitioner 'inside' the house, even though all witnesses had testified otherwise. Even though the witness answer was ambiguous, the prosecution further lied about the testimony in his closing arguments."

**Ground Four:** Trial court committed plain error when it failed to correct the State's obvious subornation of perjury, alleging "[t]he subornation of perjury was egregious, and is prominent in the record. No reasonable jurist would have pretermitted. This perjury subornation was further used to have a substantial and injurious on the jury's verdict as it precluded the issuance of a lesser included offense and circumstantial evidence instruction without question, had the trial court did its duty the results of the proceedings would have been different."

11

[1] at 1-15; [9] at 10.

Respondent argues that Moore exhausted in state court only Ground One (b) and (c) and Grounds Three and Four. [13] at 9-12. Respondent asserts that the exhausted claims have no merit, and the remaining claims are procedurally defaulted from federal review. *Id.* at 12. Moore argues that Respondent's exhaustion arguments are hyper-technical, he exhausted each claim, and he is entitled to relief. [11] at 1-6, 10.

## II. DISCUSSION

A.    <u>Standard of Review</u>

Moore's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, a petition for a writ of habeas corpus by a person in custody under a state court judgment can be granted "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An alleged error in the interpretation or application of state law is not an independent basis for a federal writ of habeas corpus. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Before raising a claim in a § 2254 Petition, "a defendant must exhaust all claims in state court prior to requesting federal collateral relief." *Smith v. Quarterman*, 515 F.3d 392, 400 (5th Cir. 2008); *see* 28 U.S.C. § 2254(b)(1).

[S]tate courts are the principal forum for asserting constitutional challenges to state convictions. Under the exhaustion requirement, a

12

habeas petitioner challenging a state conviction must first attempt to present his claim in state court. 28 U.S.C. § 2254(b). If the state court rejects the claim on the procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82–84 [ ] (1977), applies. And if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in §§ 2254(d)(1) and (2) applies. Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding, see id., at 90 [ ].

*Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Where a federal habeas petitioner falls to meet the exhaustion requirement of § 2254, he may overcome the procedural default in two ways. First, the petitioner must show cause for the default and actual prejudice resulting from the alleged violation of federal law. *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). For a finding of cause, there "must be something *external* to the petitioner, something that cannot fairly be attributed to him" that prevented him from raising and discussing the claims as grounds for relief in state court. *Coleman*, 501 U.S. at 753 (emphasis in original). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) (quoting *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996)).

Second, the petitioner can overcome the procedural bar by showing that a fundamental miscarriage of justice would result if the procedural bar were applied. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). He must prove "as a factual matter, that he did not commit the crime of conviction." *Id.* (internal citations

omitted). "To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Id. (*citing *Schlup,* 513 U.S. at 327).

Even where the procedural requirements of § 2254 are met, and the state court denied a claim on the merits, 28 U.S.C. § 2254(d) narrowly circumscribes a federal court's authority to grant relief to a person held in custody pursuant to a state court judgment. A writ of habeas corpus shall not be granted unless the state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it

was incorrect or erroneous. *Richter,* 562 U.S. at 101; *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (internal quotation and citation omitted). When reviewing claims in a § 2254 petition, the federal court looks to the state court's "last reasoned opinion." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012).

B.   <u>Moore's Exhausted Claims</u>

1.   **Ground One (b) and (c): Claim that Appointed Trial Counsel Was Ineffective Because He Failed to Investigate Moore's Mental Illness and Request a Competency Hearing**

Respondent acknowledges that Moore exhausted the claim in his Petition alleging that trial counsel was ineffective because he failed to investigate Moore's mental illness and request a competency examination and hearing. [9] at 11.  Moore raised this claim in his PCR Motion, which was denied summarily. *Id.* at 14.

"Due process prohibits the conviction of a person who is mentally incompetent." *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir.1990). The federal constitutional standard for legal incompetency is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "A defendant can be both mentally ill and competent to stand trial." *Mays v. Stephens*, 757 F.3d 211, 216 (5th Cir. 2014). Medical diagnoses "do not necessarily demonstrate

a lack of rational understanding of the proceedings or an inability to consult with counsel." *Zimmerman v. Cockrell*, 69 F. App'x 658, *6 (5th Cir. 2003).

The constitutional standard for Sixth Amendment effective assistance of counsel claims is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to prove ineffective assistance of counsel, a petitioner must show that (1) his attorney's performance fell below "an objective standard of reasonableness" as measured by professional norms, and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. There exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel's strategic decisions must be given a strong degree of deference. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

When a *Strickland* claim is raised in a federal habeas proceeding, the AEDPA's additional deference under § 2254(d)(1) applies, creating a "doubly deferential" standard. "Doubly deferential" means "both the state court and the defense attorney" are afforded "the benefit of the doubt." *Russell v. Denmark*, 68 F.4th 252, 272 (5th Cir. 2023) (citation omitted). "[D]eference due under section 2254(d)(1) is not diminished by the fact that the [state court] did not explain the reasons for its determination[.]" *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011). "This is because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, not the written opinion explaining that decision. Thus, in reviewing a state court opinion, [the federal habeas court] focuses on the ultimate

legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Russell,* 68 F.4th at 262 (internal quotations and citations omitted).

On direct appeal, the Mississippi Supreme Court considered Moore's related claim that the trial court should have *sua sponte* ordered a competency hearing and found no error. *Moore*, 287 So. 3d at 196-98. The Mississippi Supreme Court summarized the indicators that Moore was legally competent to stand trial, observing that

> [Moore's trial counsel] conceded he only had limited contact with Moore, but he said Moore had always offered "some kind of *reason*" for not meeting in person. (Emphasis added). Moore had said he intended to hire another attorney. And while Moore was repeatedly said to have been diagnosed and treated for PTSD, there was never any suggestion it impacted his ability to "'understand the proceedings, appreciate their significance, [and] rationally aid his attorney in his defense.'" *Harden,* 59 So. 3d at 601 (quoting *Goff,* 14 So. 3d at 644). The mere diagnosis of a mental illness or defect, without more, does not "reasonably . . . raise [ ] a doubt about the defendant's competence . . . ." *Id.* (quoting *Goff,* 14 So. 3d at 644). . . .
>
> Moreover, Moore appeared in court and spoke with the trial judge. So far as the record reveals, Moore was rational and coherent; the trial judge observed his behavior. And at the sentencing hearing, Moore himself attributed his conduct to drug and alcohol abuse rather than mental illness or incapacity *per se.* He further articulated a coherent theory of defense and was cogent enough to interject and to argue with the judge about whether he was actually inside the house when he was caught. And despite their limited contact before trial, Lockhart, Moore's attorney, knew Moore's theory of the defense and brought out facts at trial to support it.

*Id.* at 197-98.

Moore has not demonstrated that the Mississippi Supreme Court, on state habeas review, unreasonably applied *Strickland* when it rejected the claim in Ground

One (b) and (c) because it is objectively reasonable to conclude that Moore failed to demonstrate prejudice under *Strickland*. *Strickland* authorizes the Court to proceed directly to the question of prejudice, and where prejudice is not shown, the alleged deficiencies in counsel's performance need not be considered. *Sawyer v. Butler*, 848 F.2d 582, 588-89 (5th Cir. 1988) (citing *Strickland*, 466 U.S. at 698-99).

Proving prejudice under *Strickland* required Moore to prove by a reasonable probability that he was legally incompetent to stand trial. *See Bouchillon*, 907 F.2d at 595; *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994). This requires "show[ing] the facts are sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial." *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir.1998) (internal quotations and citations omitted).

Moore's claims based on alleged legal incompetency suffer from a lack of proof. With his PCR Motion, Moore submitted a few pages of mental health records. One record dated June 7, 2015 shows that Moore had a diagnosis of PTSD on that date. [10-7] at 112-17. Another dated December 27, 2018 shows that Moore had an onset date of November 22, 2017 for PTSD and major depressive disorder, recurrent, moderate, with psychotic symptoms. *Id.* at 159-60. These records are not enough to positively, unequivocally, and clearly carry Moore's burden of generating a real, substantial, and legitimate doubt about his legal competency at the time of trial. They "fail[ ] to provide sufficient insight with respect to whether Moore met the legal standard of incompetency." *Zimmerman*, 69 F. App'x at *6. A defendant can be both

mentally ill and legally competent. *Mays,* 757 F.3d at 216. Moore has not shown to a reasonable probability that, but for his counsel's alleged errors, he would have been found legally incompetent to stand trial. The claims in Ground One (b) and (c) should be dismissed with prejudice.

2.    **Ground One (e): Trial Counsel Was Ineffective for Failing to Object to Moore's Trial in Absentia**

Moore alleges that his trial counsel was constitutionally ineffective because he failed to object to his trial in absentia. Respondent does not concede that Moore exhausted this claim. [13] at 10. Moore's appellate counsel raised the claim on direct appeal, and the Mississippi Supreme Court denied relief without prejudice to Moore's right to file a PCR Motion, finding that the claim depended on facts not fully developed in the record. *Moore,* 287 So. 3d at 196. Respondent asserts that Moore did not reurge this claim in his PCR Motion. But buried in the 900-plus pages of documents encompassing Moore's PCR Motion, Moore mentioned that "Public Defender Attorney Lockhart was ineffective in his failure to object when the trial judge advised Mr. Lockhart of the Court's intent to proceed with trial without Mr. Moore being present." [10-7] at 183. Moore arguably exhausted this *Strickland* claim.

The Mississippi Supreme Court considered a related issue on direct appeal, namely Moore's claim that the trial court erred by trying him in absentia. *Moore,* 287 So. 3d at 198. Moore references the trial court error claim in his Traverse, [11] at 13, but only asserted a *Strickland* claim in his § 2254 Petition, [1] at 5-15. On direct appeal, the Mississippi Supreme Court acknowledged that a felony defendant has a Sixth Amendment right to be present at trial. *Id.* It then acknowledged United States

Supreme Court law holding that this constitutional right can be waived by "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). In affirming the trial judge's finding that Moore's absence from trial was "clearly willful, voluntary, and deliberate," and finding no merit to Moore's claims that his mental condition caused him to miss trial involuntarily, the Mississippi Supreme Court observed that

> Moore had complained about his attorney and had asked for a continuance; his request was denied. Then, after a short recess, Moore walked out of the courthouse and apparently went to another attorney he was trying to hire. Moore's court-appointed counsel advised him he would be tried anyway, as did the attorney he tried to hire. Moore did not return.

*Moore,* 287 So. 3d at 198.

On state habeas review, it would have been objectively reasonable for the Mississippi Supreme Court to find that Moore's *Strickland* claim based on his trial in absentia failed for the same reason that his trial error claim on direct appeal failed – Moore's absence from trial was clearly willful, voluntary, and deliberate, as proven by his discussions and conduct before the judge. The record, as summarized by the Mississippi Supreme Court on direct appeal, showed that Moore expressed an understanding of the case against him and the gravity of the habitual offender sentence he faced. [10-2] at 13-19; [10-3] at 111; *Moore,* 287 So. 3d at 197 (observing that "Moore was rational and coherent; the trial judge observed his behavior."). Moore has not shown to a reasonable probability that, but for his counsel's alleged error in not objecting to his trial in absentia, the trial judge would have continued the trial.

The trial judge had already denied Moore's counsel's request to continue the trial in furtherance of plea negotiations. "[C]ounsel is not required to make futile motions or objections." *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990). Ground One (e) should be dismissed with prejudice.

3. **Grounds Three and Four: Subornation of Perjury and Prosecutorial Misconduct at Trial Violated Moore's Due Process Rights**

Moore asserts that Officer Jimmerson committed perjury and the prosecution suborned perjury by using Jimmerson's perjured testimony in closing argument. [1] at 8. According to Moore, Officer Jimmerson committed perjury because when he was first called at trial, he testified that he found Moore in a storage room outside the house, but on recall he testified that he found Moore inside the house hiding in a closet. [1] at 8. Respondent submits that Moore exhausted these claims. [9] at 31-37. Moore raised them in his PCR Motion. [10-7] at 18, 203-04, 253-55.

On federal habeas review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. A federal habeas court may not substitute its view of the evidence for that of the factfinder but must consider all the evidence in the light most favorable to the verdict. *See Weeks v.*

*Scott*, 55 F.3d 1059, 1062 (5th Cir.1995). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

The prosecution denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States,* 405 U.S. 150, 153 (1972). To obtain relief on federal habeas review for such a claim, a petitioner must show that: (1) the testimony was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir.1993). "Conflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). Contradictory testimony among witnesses or inconsistencies within a witness's testimony are to be resolved by the trier of fact and do not suffice to establish that testimony was perjury. *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988)

On direct appeal, the Mississippi Supreme Court rejected Moore's challenge to the weight of the evidence and summarized the evidence as follows:

> The door to the victim's house had been kicked in and valuable property belonging to the victim and her daughter was found in a vehicle owned by Moore's mother and parked in the driveway. Moore was found hiding in a storage room attached to the victim's house. Little evidence supported the defense theory that Moore was there with permission.

*Moore*, 287 So. 3d at 199.

Moore has not proven perjury or subornation of perjury. What he has demonstrated is that during Officer Jimmerson's recall testimony and the

prosecution's closing argument, Officer Jimmerson and the prosecution used the terms "storage room," "shed," and "closet" interchangeably.

Officer Jimmerson testified on direct that

[I] didn't know if anyone was inside or not. I just knew a vehicle was there. Once we went in through the front door [McGee] immediately said, somebody's been in my house. So I said just come back out. Let me call the police and get them here, so that we can check out the house on the inside. I said while the police was coming, I said I'm gonna check the perimeter on the outside. I went back to the garage area where that vehicle was, and I saw the storage-room door open. And once I kind of peeped inside the storage room, I observed a man in the corner; tall, kind of dark skin fellow, and he had on a white T-shirt. I immediately drew my weapon, and I shouted to him, come out, come out. And when he came outside the garage area, I immediately put him on the ground and held him [until] the officers arrived.

[10-3] at 12.

Officer Jimmerson was asked if he had an opportunity to take photographs, and responded, "Yes, I sent photographs of the truck and the storage room to Detective." *Id.* at 13. The prosecution asked Officer Jimmerson if he "c[ould] see the area where the defendant was hiding in this picture?," and Jimmerson said, "If you look to the right, the far right – yeah, right there, -- that's a door. That's where the storage room is, and that's where he was inside." *Id* at 14. On cross-examination, Officer Jimmerson testified that he "ordered [Moore] to come out of the closet, out of that storage room." *Id.* at 19. On redirect, Officer Jimmerson was asked where he found Moore, and he responded "[h]iding in the storage room." *Id.* at 22.

Officer Jimmerson was recalled after the defense rested, and Moore's claim of perjury and subornation of perjury is based largely on the following exchange during Officer Jimmerson's recall:

> Prosecutor:  [W]ho was in the house hiding in the closet?
>
> Jimmerson:  The suspect, Mr. Corey, I guess.
>
> . . .
>
> Prosecutor:  [ ] Did you see any evidence of breaking and entering?
>
> Jimmerson:  Yes.
>
> Prosecutor:  How was that?
>
> Jimmerson: When I got Mr. Corey out of the closet and he was apprehended – when we finished checking out the house – it's a door across from the storage room door that leads into the house. It had been kicked in.

[10-3] at 52, 53.

Moore submits that "[g]iven the fact that Jimmerson had testified repeatedly that he had first confronted Moore outside the house in a storage shed . . . and given the fact that witness and homeowner Nita McGee had testified the same . . ., this was an obvious attempt by the prosecution to suborn perjury." [11] at 15-16. Moore claims that the prosecution took, what he calls the "ambiguous" testimony of Officer Jimmerson on recall, [1] at 8, to argue during closing argument that Moore was found inside the house by stating, "Would someone who was allowed to be there be hiding in a closet? Would someone who was allowed to be there have to steal things and put

24

them in the back of his car?," *id*. at 93; "It really doesn't get any better than caught in the closet. Where is Corey Moore? In the closet," *id*. at 98.

Viewing the statements of Officer Jimmerson and the prosecution in the context of all that was said at trial, it was not the position of either Jimmerson or the prosecution that Moore was found inside the house. The prosecution alleged, the jury believed, and the Mississippi Supreme Court observed that though Moore was found outside the house in a storage room, it could be discerned that he had been inside the house because a door to the home was kicked in, and items belonging to the victim were inside of his mother's truck. *Moore*, 287 So. 3d at 195. It was the role of the jury to resolve conflicts in the statements made at trial. Moore's pointing to inconsistencies in how the storage room was described does not demonstrate a violation of a federal right. Grounds Three and Four should be dismissed with prejudice.

D.    Moore's Unexhausted Claims

1.    **Ground One (a): Trial Counsel Was Ineffective Because He Failed to Object to Perjury and Blatant Subornation of Perjury**

Moore argued in state court that his right to due process was violated because of Officer Jimmerson's alleged perjury and the prosecution's alleged subornation of perjury. Moore did not allege in state court, as he does here, that his trial counsel was ineffective because he did not object to what Moore characterizes as perjury and subornation of perjury.

The *Strickland* claim in Ground One (a) is unexhausted because the law "require[s] a state prisoner to present the state courts with the same claim he urges

upon the federal courts." *Lucio v. Lumpkin*, 987 F.3d 451, 464 (5th Cir. 2021) (citing *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). "[A] state prisoner who does not fairly present a claim to a state habeas court – specifying both the legal and factual basis for the claim – may not raise that claim in a subsequent federal proceeding." *Id.*; *see Russell,* 68 F.4th at 269. As Moore has filed both a direct appeal and a PCR Motion in state court, he has no available path to raise the ineffective assistance claim in Ground One (a) before the Mississippi Supreme Court in a procedurally proper manner. The claim is procedurally defaulted and barred from federal habeas review. *See Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (holding that when it is obvious that a claim is procedurally barred in state court, "we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review") (citation omitted). Moore has not attempted to show cause and actual prejudice for the procedural default or a fundamental miscarriage of justice that would allow this court to review the claim on the merits. *See Coleman,* 501 U.S. at 753; *Hughes,* 530 F.3d at 343. Ground One (a) should be dismissed with prejudice. *Chancellor v. Mississippi*, 129 F. App'x 878, 880 (5th Cir. 2005) (finding a procedurally defaulted claim should be dismissed with prejudice).

Even assuming Ground One (a) was not procedurally defaulted, it would fail for the same reasons that Grounds Three and Four fail. Moore did not prove perjury or subornation of perjury. He failed to rebut the *Strickland* presumption that counsel's decision not to object fell within the wide range of professional assistance and did not prove to a reasonable probability that the result of his trial would have

been different had his counsel objected to the challenged statements by Officer Jimmerson and the prosecution.

2. **Ground One (d): Trial Counsel Was Ineffective for Failing to Request a Lesser Included Offense Jury Instruction and a Circumstantial Evidence Jury Instruction**

Moore's Petition raises two *Strickland* ineffective assistance of counsel claims based on jury instructions. Moore claims that his trial counsel was ineffective for not requesting a jury instruction for the lesser-included offense of trespass, and Moore claims that his trial counsel was ineffective for not requesting a jury instruction for a case based wholly on circumstantial evidence. [11] at 18-19.

On direct appeal, Moore did not raise claims based on jury instructions. On state habeas review, Moore alleged trial court error based on jury instructions, but Moore did not raise ineffective assistance of counsel claims based on jury instructions. As with the *Strickland* claim in Ground One (a), Moore did not exhaust the ineffective assistance of counsel claims in Ground One (d), and he has no available path to raise them before the Mississippi Supreme Court in a procedurally proper manner. Ground One (d) is procedurally defaulted, and Moore has not attempted to show cause and actual prejudice or a fundamental miscarriage of justice that would allow the Court to review the merits of Ground One (d). Ground One (d) should be dismissed with prejudice.

Even if not procedurally defaulted, the claims in Ground One (d) fail substantively. Most obviously, Moore's claim based on his counsel's alleged failure to propose a jury instruction on the lesser included offense of trespass fails because

27

Moore's trial counsel, in fact, proposed a jury instruction for the lesser included offense of trespass, and the trial judge rejected it. [10-3] at 67-70.

Both *Strickland* claims based on jury instructions fail because they do not present an issue arising under federal law. Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Before a federal court may overturn a conviction resulting from a state trial on a challenge to a jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (emphasis in original).

The jury instruction on the lesser included offense of trespass was rejected by the trial judge because there was evidence that a door to McGee's home had been kicked in, and items that had been in McGee's home were in a car belonging to Moore's mother and within Moore's control. [10-3] at 67-70. The trial judge based this decision on *Gillum v. State,* 468 So. 2d 856, 861 (Miss. 1985), [10-3] at 67-69, where the Mississippi Supreme Court found that a trespass jury instruction was not warranted where "proof showed beyond a reasonable doubt that [the defendant] entered the house with larcenous intent." Moore's claim that the judge erroneously rejected the lesser included offense jury instruction presents only an issue of state evidentiary law and does not state a claim for federal habeas relief.

The same analysis applies to Moore's other jury instruction argument. His counsel initially proposed the following jury instruction on wholly circumstantial evidence but then withdrew it:

> If you find that the State's case against the Defendant is wholly circumstantial in nature, you must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with the innocence of Corey Moore.
>
> Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does or does not exist.

[10-1] at 46.

Moore's counsel withdrew the jury instruction based on discussions with the trial judge and prosecution during the charge conference, agreeing with them that the jury instruction was not appropriate because the case against Moore was not wholly circumstantial. [10-3] at 74-75. Moore's argument that a wholly circumstantial jury instruction was appropriate presents only an issue of state evidentiary law and does not state a claim for federal habeas relief. Ground One (d) fails procedurally and substantively.

### 4.   **Ground Two: Ineffective Assistance of Appellate Counsel Claims**

Respondent asserts, and review of Moore's 900-page PCR Motion confirms, that Moore did not raise ineffective assistance of appellate counsel claims in state court. "[T]he claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures." *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir.

2009). Moore had an opportunity to raise ineffective assistance of appellate counsel claims in his PCR Motion and no external impediment existed to prevent him from doing so because he represented himself in the state habeas proceedings. Like the claims in Ground One (a) and (d), Moore's claims in Ground Two are procedurally defaulted, and Moore has not attempted to show cause and actual prejudice for the procedural default or a fundamental miscarriage of justice that would allow the court to review the merits of Ground Two. Ground Two should be dismissed with prejudice.

### III. CONCLUSION

Moore's Petition [1] should be dismissed with prejudice.

### IV. NOTICE OF RIGHT TO APPEAL/OBJECT

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the proposed findings and recommendations. The District Judge at that time may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party, except under grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. §636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

**SIGNED**, this the 27th day of December, 2023.

s/ *Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE