UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

COREY MOORE                                                    PETITIONER

V.                                      CIVIL ACTION NO. 3:21-CV-459-KHJ-BWR

WARDEN UNKNOWN PORTILLO                                        RESPONDENT

ORDER

Before the Court is United States Magistrate Judge Bradley W. Rath's [15]
Report and Recommendation. Petitioner Corey Moore filed a timely [16] Objection
to the Report. For the following reasons, the Court OVERRULES Moore's [16]
Objection, ADOPTS the [15] Report, and DISMISSES Moore's [1] Petition with
prejudice.

I.      Background

This case arises from Moore's conviction in absentia in the Circuit Court of
Hinds County, Mississippi. The Court adopts the facts below as summarized by the
Magistrate Judge in his Report. [15] at 2–12.

In February 2015, Moore was indicted in the Circuit Court of Hinds County
for burglary of the dwelling of Nita McGee[1] which occurred on August 23, 2014, in
violation of Mississippi Code Annotated section 97-17-23. R. [10-1] at 7. Moore was
declared indigent, and on May 19, 2015, an attorney was appointed to represent
him at trial. *Id.* at 12–13. Trial was initially set to occur on August 10, 2015, but did

_____

[1] At the time of the burglary, the victim's name was Nita Cornelius. *See* [10-1] at 7.

not occur until June 5, 2017. *Id.* at 10, 17–26. Thirteen days before trial, on May 24, 2017, the prosecution moved to amend the indictment to reflect that Moore was a habitual offender under Mississippi Code Annotated section 99-19-81. *Id.* at 28–29. This amendment meant that if Moore was convicted, he was to "be sentenced to the maximum term of imprisonment prescribed for such felony," which for the crime charged was 25 years. Miss. Code Ann. § 99-19-81; *see also* [10-2] at 8–9.

On Monday, June 5, 2017, when trial was called, Moore was not in the courtroom. [10-2] at 7. The trial judge asked Moore's appointed trial counsel if Moore knew that his trial was starting, and counsel responded that he had "spoke[n] with him Saturday and told him the date and the time to be here." *Id.* Counsel asked the judge for a continuance to discuss a plea with the prosecutors, complaining that Moore was not originally indicted as a habitual offender and the plea deadline had passed before the indictment was amended, with no plea having been discussed. *Id.* at 8–11. The prosecution responded that no plea offer was required. *Id.* at 10. The trial judge took the defense's motion for continuance under advisement. *Id.* at 11.

On June 6, 2017, Moore was present when trial was called. *See id.* at 12. Trial counsel told the judge that Moore wished to address the court. *Id.* Moore was given leave and told the judge:

> This is the first time I've laid eyes on my public defender since he's been assigned to me. I've only talked to him, like, three times. I only found out about me having to be here in court yesterday—Saturday. He called me last Saturday to tell me about today. Only reason why I knew it was him today is because I recognized his voice from talking with him. But we haven't discussed the case. I mean, and I been trying to go ahead and

2

get my own money so I can prepare for my own defense. Because, I mean, he don't—I mean, we haven't talked about anything.

*Id.* at 13.

The trial judge gave Moore's counsel an opportunity to respond, and counsel stated:

And just for the record, Your Honor, the last time he contacted me was via telephone, was to tell me that he was firing me, gonna get his own lawyer. And, you know, nobody has ever been—filed any entry of appearance and no order has been signed. So I've been telling Mr. Moore that unless you sign an order, I'm still on the case as far as I know. But he is correct, this is the first time we have met. But it's not due to any fault of my own.

*Id.* at 14.

The trial judge concluded that trial would continue, and Moore again asked to speak. *Id.* at 14, 16–17. Given leave, he stated:

I'm a veteran. I was in the United States Army. I been shot five times, I've been diagnosed with PTSD. The meds they got me on—that's what I brought here today, you know. And literally, and like I said, I don't even feel comfortable. He don't know nothing about me. I mean, I just don't feel comfortable sitting here. I mean, this is my life. And then he telling me this 25 years, they trying to charge me as a habitual. And for me to just get bumrushed into this, I mean, he don't know nothing about me. Nothing. He don't even know about my medical condition.

*Id.* at 17–18.

Moore's trial counsel responded:

Once again, Your Honor, he is correct that this is our first time meeting. This is not my first time talking to this individual and trying to request a meeting. He's always had a reason for not meeting me[,] including him being at the VA [(Department of Veterans Affairs)] for a few months last year after being diagnosed with PTSD. He even had a letter from his caseworker at that time saying that. Mr. Moore, as I said to the Court before, has called me a couple of times. We have talked on the phone more than once. Mr. Moore has told me a couple of times that he was hiring his own attorney and that he wanted to fire me, and he's never

> done anything to try to do that. So I just don't know what else I'm
> supposed to do here, Your Honor. I've tried. He's right, we don't know
> each other, we haven't actually had a sit down and discuss[ed] the case.
> But again, I don't believe that's due to anything that I've done wrong.

*Id.* at 18.

The trial judge denied the defense's motion to continue the trial, finding that

> [i]t's apparent Mr. Lockhart has attempted to discuss the case with Mr.
> Moore, who has related to Mr. Lockhart that he intended at some point
> to hire an attorney—which he never did. So we're here today. Mr.
> Moore's been aware the case has been set for trial for quite some time,
> and we're going to proceed with the trial. So we'll take a 5-minute
> comfort break.

*Id.* at 19.

During the comfort break, Moore left the courthouse and did not return. *Id.*
at 19–20. His counsel called him on his cell phone, the call went to voicemail, and
counsel left Moore a message stating that trial was going forward, and Moore
needed to be there. *Id.* at 21, 138. When the judge was told this, he stated, "Well, he
was here, he knew we were about to start voir dire, he was sitting at the counsel
table. And so we're going to proceed." *Id.* at 21.

The rest of June 6, 2017, was spent picking a jury. *Id.* at 24–132. When the
case was called on June 7, 2017, Moore's counsel informed the judge that he had
been contacted by attorney Robyn Teague, who told him that Moore had contacted
her on June 6 about representing him. *Id.* at 133. Teague was present and
explained to the judge:

> Your Honor, first of all Mr. Moore is—I never entered my appearance on
> this case. And he did make contact with me in about 2015. He started
> paying on a retainer, never finished. He's got mental issues. When I met
> him he was—he escaped from, or he left—I'm not gonna say escape. He

4

left the VA Hospital. And he was getting treatment then for psychiatric condition.

*Id.* at 134.

The judge asked Teague how she knew that Moore had been in the psychiatric ward, and she stated that Moore's mother and Moore had told her, but she had not independently verified that information. *Id.* at 135. Teague stated that "from the last 24-hours communication with him—I'm not a medical professional—but common sense tells me that he's not stable at all. And I think he's dangerous. And he's not in his right mind; I do know that." *Id.* at 136. The judge asked Teague, "Are you representing him currently?" *Id.* Teague answered, "I'm not. But I think in his mind he thinks that I am. I don't—I mean, if I have to I will. But, I mean, I'm not prepared to." *Id.* at 136–37. The judge asked Teague whether Moore knew that trial would continue in his absence, and she stated yes, she had told Moore on June 6 that the trial would go forward whether he attended or not. *Id.* at 137. The judge then released Teague. *Id.* at 141.

The judge and Moore's counsel had the following exchange:

The Court: Mr. Lockhart, you've represented him for a while. And I note at no time did you file a motion to have a mental exam done. Could you comment on that?

Counsel: . . . I've had phone conversations with this individual on several occasions. And every time I've suggested—I've tried to get him to actually meet with me face to face—he said some kind of reason for why he won't me[e]t with me or why he couldn't meet with me or whatever. So over the phone, I've never detected anything over the phone where he had any kind of mental issues. And then at some point last year, I don't remember the exact date, I did get a letter from his VA worker that he's at their facility, and he's been diagnosed or getting treatment for PTSD. But again—

| The Court: | Was that recently or was that a long time ago? |
|---|---|
| Counsel: | No, that was—it would have had to have been early part of last year, like, January or February or something like that of last year. |
| The Court: | And since you got that letter, you've talked to him on the phone several times; you haven't noticed any mental instability? |
| Counsel: | Since I got that letter—he last contacted me, my phone records show it was, like, in February of last year. Where he said—he left a message on my voicemail for me where he said he was hiring another attorney, and thank you for what all you've done for me but I got another lawyer representing me. And then I sent something back to him—returned the call back to him saying, if you've got another lawyer, that lawyer needs to file the appropriate paperwork. That was like I said, sometime in, like, in February last year. The last time I did call him—and I remember that from the number that I had—was, like, in April of last year and I left him a message. It was basically about us having a new court date and you need to have your new lawyer, if you have one, file the paperwork. I haven't had any phone contact with him since February of last year. But we had talked several times before then. And like I said, every time I talked to him on the phone, I mean, he seemed competent over the telephone. |

*Id.* at 138–40.

The trial judge concluded that

> [Moore] was here until five minutes before jury selection yesterday sitting at that counsel table. I announced we were about to bring the jury in to try his case. He had absolutely no doubt, that he knew that his trial was five minutes away. We took a comfort break, a short one; when we returned, he was gone. He left some personal effects on the table. And on report of his counsel he had left the courthouse. He hadn't been back since. His absence is clearly willful, voluntary, and deliberate. And I'm finding that he's aware of his trial. And relying on [Mississippi Code Annotated section] 99-17-9, I'm going to find that he's waived his right to be present at the trial, and I'm going [to] order the trial to proceed in his absence.

*Id.* at 141–42.

The prosecution put on its case, presenting three witnesses: Detective Paul Hobson, who investigated the incident on behalf of the Jackson Police Department; Officer George Jimmerson, a Jackson Police Department officer and the ex-husband of the victim Nita McGee; and Nita McGee. *Id.* at 148–49; [10-3] at 11, 23. The trial testimony showed that on August 23, 2014, McGee was staying with her parents while recovering from surgery. [10-3] at 42. She was not staying at her home that she rented and lived in with her daughter, who is also Jimmerson's daughter. *Id.* at 11, 42. Jimmerson drove their daughter to McGee's house on August 23, 2014, to pick up items and saw an unknown utility vehicle in McGee's driveway. *Id.* at 11, 14. A later police investigation revealed that the utility vehicle belonged to Moore's mother, and items belonging to McGee and her daughter were found in the vehicle, including a clarinet, paintings, clothing, bedding, an air mattress, and an air pump. *Id.* at 6, 13, 31–32; *Moore v. State*, 287 So. 3d 189, 195 (Miss. 2020).

When Jimmerson saw the unknown vehicle, he called McGee and alerted her and then called the police. [10-3] at 11–12. McGee arrived quickly. *Id.* at 11. Jimmerson testified that while waiting for the police to arrive, he

> check[ed] the perimeter on the outside. I went back to the garage area where that vehicle was, and I saw the storage-room door open. And once I kind of peeped inside the storage room, I observed a man in the corner; tall, kind of dark skin fellow, and he had on a white T-shirt. I immediately drew my weapon and I shouted to him, come out, come out. And when he came out outside the garage area I immediately put him on the ground and held him [until] the other officers arrived.

*Id.* at 12.

McGee came to the area where Jimmerson was holding the man and saw that the man was Moore, who she knew mostly through her job. *Id.* at 13. McGee worked

as a mental health nurse practitioner at the Jackson VA Medical Center, where Moore had been a mental health patient for an extended period. *Id.* at 23, 27–28, 36–37. Though Moore was not McGee's patient, she got to know him because sometimes she allowed him to use her office for a "quiet time" program, she saw him at her uncle's church, she once gave him money for his child's uniform, and she once paid him to help her move a large piece of furniture into her home. *Id.* at 28–30, 33, 36–39, 42–49. While McGee was away from work and recovering from surgery, Moore contacted her often through voicemail and text to check on her. *Id.* at 42–43. McGee stated that other veterans had also done so. *Id.* McGee testified that she did not allow Moore to be at her home or take her property. *Id.* at 32–33. According to the defense, Moore had permission to be at McGee's home because "they were in a dating relationship." [10-2] at 147.

When the prosecution rested, Moore's trial counsel moved for a directed verdict that was denied. [10-3] at 56–60. The trial judge read the jury instructions, and counsel presented closing arguments. *Id.* at 62–99. The jury returned a verdict finding Moore guilty of house burglary. [10-1] at 47; [10-3] at 101–02.

Moore was arrested on a bench warrant and appeared for sentencing on October 17, 2017. [10-1] at 48; [10-3] at 106, 109. At sentencing, Moore asked to speak to the judge and stated:

> First of all, I want to apologize to the Court for running out. I just had a lot going on mentally-wise, but I'm not a criminal, Your Honor. I served my country in '91. I went to Iraq. And when I came back from Iraq, I started using drugs real heavy and both of my convictions are, you know, for possession. I mean, I'm a drug addict. That's the only thing I know I'm guilty of. I mean, this house burglary. . . . I was in the army, yes, sir.

> In the army, 13th (inaudible) Field Artillery. And ever since I came back from over there, things just haven't been the same in my life, you know, and I self-medicate. I turned to drugs and alcohol. And I'm not making no excuses for it, but I haven't been the same in over 20 something years. And for me to be brought up on these charges that I'm on now, it's unfair because I didn't do the house burglary. I—I didn't do it. Me and the lady was dating. She got mad. . . . I'm just—you know, this is—I'm looking at 25 years. . . . I went to treatment on the 7th of August. After I left court, I went to treatment, you know, so I've been clean since the 7th of August.

[10-3] at 110–12.

The judge ruled

> Mr. Moore, you were convicted of house burglary back in June. . . . You remember it. You came for a little bit of the trial and then all of a sudden you were gone. . . . And you explained you had a lot on your mind and I understand that. At any rate, 12 of your fellow Hinds County citizens found you guilty. Mr. Lockhart did the best job he could do without you being here.

*Id.* at 113–14.

Moore was sentenced as a habitual offender to serve 25 years without eligibility for parole. *Id.* at 116; [10-9] at 335. Through appointed appellate counsel, Moore directly appealed his conviction and sentence to the Mississippi Supreme Court. [10-9] at 344, 347. The Mississippi Supreme Court affirmed Moore's conviction and sentence in a published opinion and denied his motions for reconsideration and rehearing. *See Moore*, 287 So. 3d 199; [9-2]; [9-3].

Moore was not entitled to appointed counsel on state habeas review. Proceeding pro se, he filed an "Application for Leave to Proceed in the Trial Court of Hinds County Mississippi" requesting habeas relief. [10-7]; [10-8]; [10-9]. His postconviction review motion (PCR Motion) consisted of three volumes of documents totaling over 900 pages. *Id.* Moore wrote on the PCR Motion that "the [e]nclosed is

the PCR[.] Petitions are all of one post-conviction separate issues[;] please read together." [10-8] at 224. The Mississippi Supreme Court summarily denied Moore's PCR Motion, finding "that the issues raised do not demonstrate a 'substantial showing of the denial of a state or federal right[.]'" [9-4] (quoting Miss. Code Ann. § 99-39-27(5)). No further reasoning was provided, and Moore's motion for rehearing was denied. *Id.*; [9-5].

Moore, proceeding pro se, filed this 28 U.S.C. § 2254 Petition in this Court seeking federal habeas corpus relief. *See* [1]. The Magistrate Judge "considered the submissions of the parties, the record, and relevant law," and "conclude[d] that Moore's Petition [1] should be dismissed with prejudice because [his] claims either have no merit or are procedurally defaulted." [15] at 1. Moore timely filed an Objection. [16].

II.   Standard

The Court reviews de novo the portions of the Report to which Moore objects, *see* 28 U.S.C. § 636(b)(1), and the remaining portions under a "clearly erroneous, abuse of discretion[,] and contrary to law" standard of review. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam). "[M]erely reurging arguments contained in the original petition" does not raise a factual objection. *Edmond v. Collins*, 8 F.3d 290, 293 n.7 (5th Cir. 1993). The Court need not "reiterate the findings and conclusions of the magistrate judge" or consider "[f]rivolous, conclusive[,] or general objections." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (per curiam); *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th

Cir. Unit B 1982) (en banc), *overruled on other grounds by Douglass v. United*

*Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996) (en banc).

## III.   Analysis

For ease of reference, the Court borrows the Report's accurate summary of

Moore's claims:

| | |
|---|---|
| Ground One: | Ineffective assistance of trial counsel for failing to:<br>(a) object to blatant subornation of perjury;<br>(b) investigate serious mental illness and hospitalization of Moore;<br>(c) request a competency hearing;<br>(d) request a circumstantial evidence and/or lesser included offense instruction; and<br>(e) object to Moore's trial in absentia while competency was unestablished. |
| Ground Two: | Ineffective assistance of appellate counsel for failing to:<br>(a) raise subornation of perjury and State's misconduct of citing the perjury in closing argument;<br>(b) challenge trial in absentia when Moore's competency was in question;<br>(c) question the impact of perjury subornation on jury instructions; and<br>(d) argue that Moore's conduct was, at most, mere trespassing under Mississippi statutory and common laws. |
| Ground Three: | Due process violation based on subornation of perjury and/or prosecutorial misconduct, alleging "after announcing the state rest, the prosecutor recalled a witness that had earlier testified he found petitioner outside of the house. In a leading question, the prosecutor 'reminded' the witness that he had found petitioner 'inside' the house, even though all witnesses had testified otherwise. Even though the witness answer was ambiguous, the prosecution further lied about the testimony in his closing arguments." |

| Ground Four: | Trial court committed plain error when it failed to correct the State's obvious subornation of perjury, alleging "[t]he subornation of perjury was egregious, and is prominent in the record. No reasonable jurist would have pretermitted. This perjury subornation was further used to have a substantial and injurious [impact] on the jury's verdict as it precluded the issuance of a lesser included offense and circumstantial evidence instruction[.] [W]ithout question, had the trial court did its duty the results of the proceedings would have been different." |
|---|---|

[15] at 10–11; *see also* [1] at 1–15; [9] at 10.

The Magistrate Judge "considered the submissions of the parties, the record, and relevant law," and "conclude[d] that Moore's Petition [1] should be dismissed with prejudice because [his] claims either have no merit or are procedurally defaulted." [15] at 1. Specifically, the Magistrate Judge concluded:

- Moore failed to exhaust Ground One (a) and that it nevertheless lacks merit. *See id.* at 25–27.
- Grounds One (b) and (c) lack merit. *See id.* at 15–19.
- Moore failed to exhaust Ground One (d) and that it nevertheless lacks merit. *See id.* at 27–29.
- Moore arguably exhausted Ground One (e) but that it lacks merit. *See id.* at 19–21.
- Moore failed to exhaust Ground Two. *See id.* at 29–30.
- Grounds Three and Four lack merit. *See id.* at 21–25.

Moore timely filed an [16] Objection to the Report. As explained below, all of Moore's objections fail. Thus, the Court OVERRULES Moore's [16] Objection, ADOPTS the [15] Report, and DISMISSES Moore's [1] Petition with prejudice.

A.  Grounds One and Two: Ineffective Assistance of Counsel ("IAC") Claims

In Ground One, Moore alleges ineffective assistance of trial counsel ("IATC"). In Ground Two, he alleges ineffective assistance of appellate counsel on direct

appeal ("IAAC"). As to both, Moore objects that "[i]t would be an unreasonable application of federal law to disallow [his] IAC claims." [16] at 5. The Court liberally construes this objection as a challenge to the [15] Report's findings of fact and conclusions of law related to Moore's IAC claims. As a result, the Court will review Grounds One and Two de novo, granting the appropriate deference owed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the relevant state court rulings. *See Russell v. Denmark*, 68 F.4th 252, 261–62 (5th Cir. 2023).

1. Unexhausted IAC Claims

Moore did not exhaust Grounds One (a), One (d), or Two. Because Mississippi Code Annotated section 99-39-27(9) would now preclude him from doing so, these claims are procedurally barred. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Moore cannot clear that procedural bar.

Under the AEDPA, a petitioner "may not raise a claim in federal court unless [he] . . . first exhausted [it] in state court." *Neal v. Vannoy*, 78 F.4th 775, 782 (5th Cir. 2023) (citing § 2254(b)). "Whether a federal habeas petitioner has exhausted state remedies is a question of law . . . ." *Russell*, 68 F.4th at 269 (cleaned up). "Exhaustion requires that a petitioner first present the substance of his federal claims to the highest state court either through direct appeal or by state collateral review procedures." *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009) (cleaned up). A petitioner cannot "smush[] together separate . . . claims to create a new one that the state never considered." *Lucio v. Lumpkin*, 987 F.3d 451, 481 (5th Cir. 2021) (en banc) (plurality opinion). Instead, the law requires "a state prisoner

to present the state courts with the *same claim* he urges upon the federal courts." *Id.* at 464 (quoting *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)). In other words, "the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (cleaned up); *see also Wilder v. Cockrell*, 274 F.3d 255, 261 (5th Cir. 2001) (explaining that the Fifth Circuit considers "the exhaustion of multiple, distinct [IAC] claims . . . separately").

Moore failed to exhaust the claims in Ground One (a), One (d), or Two. As for Ground One (a), Moore never—on direct appeal or in his 900-plus-page PCR Motion—pressed an IAC claim for failing to object to subornation of perjury. Rather, he only argued in his state PCR Motion that the prosecution's subornation of perjury violated his due-process rights and that the trial court committed plain error by failing to correct it. *See* [10-7] at 18, 203–04, 248–56. In effect, Moore "argu[ed] one thing in state court and another broader thing in federal court." *Lucio*, 987 F.3d at 482. Because Moore did not present the same claim in state court that he presents here, he has not exhausted Ground One (a).

The same analysis applies to Ground One (d)—trial counsel's failure to request a circumstantial-evidence or lesser-included-offense instruction. Moore argued in state court that the trial court erred in not giving certain jury instructions, but he never alleged an IATC claim in state court based on a failure to request such instructions. *See* [15] at 27; [10-7]; [10-8]; [10-9]. He therefore has not exhausted Ground One (d).

Moore also failed to exhaust Ground Two—IAAC. "[T]he claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures." *Hatten*, 570 F.3d at 605 (cleaned up). Moore concedes that he did not raise this issue in his PCR Motion. *See* [1] at 7. The Court's review of the record confirms as much.

As explained above, Moore has failed to exhaust his state remedies for Grounds One (a), One (d), and Two. And "the court to which he would be required to return to meet the exhaustion requirement [(the Mississippi Supreme Court)] would now find the claim procedurally barred." *Finley*, 243 F.3d at 220; *see also* [9-4]; Miss. Code Ann. § 99-39-27(5), (9). So these claims are "procedural[ly] default[ed] for purposes of federal habeas corpus relief." *Finley*, 243 F.3d at 220.[2] Accordingly, this Court may not reach the merits of these claims unless Moore shows (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).[3] The existence of cause

---

[2] The procedural default forecloses Moore's argument that "[a]t most, what has ensued is a mixed petition, which should have compelled the Magistrate[] Judge to recommend a stay on any issues believed to be undeveloped in state court." [16] at 5–6 (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)). Regardless of any "good cause" for Moore's failure to exhaust, the procedural default renders his unexhausted claims "plainly meritless" for purposes of issuing a stay. *Neville v. Dretke*, 423 F.3d 474, 479–80 (5th Cir. 2005) (quoting *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).

[3] The Court need only consider the cause plus prejudice exception, as the fundamental miscarriage of justice exception requires Moore to show that "it is more likely than not" that no reasonable fact-finder would have found him guilty of the offense "in the light of . . . new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Moore has not presented any such evidence.

15

for the default normally turns on whether an external impediment prevented compliance with the state procedural rule. *Id.*

For the first exception—cause plus prejudice—Moore's reliance on *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), is partly well-placed. *See* [12] at 8. To be sure, those cases permit federal courts to review the merits of procedurally defaulted and substantial IATC claims brought by petitioners who were unrepresented[4] (or ineffectively represented) in state habeas proceedings. *Martinez*, 566 U.S. at 14; *Trevino*, 569 U.S. at 429.[5] To qualify as "substantial," an IATC claim must have "some merit." *Martinez*, 566 U.S. at 14. The Court declines to reach the merits of Moore's defaulted IATC claims—Grounds One (a) and (d)— because they are not substantial. *Id.* As for Moore's procedurally defaulted IAAC claims, *Martinez* and *Trevino* simply do not apply to them. *Davila v. Davis*, 582 U.S. 521, 528–30 (2017).

---

[4] Under Mississippi law, Moore was not entitled to counsel on post-conviction review.

[5] In *Martinez*, the Supreme Court held that where, under state law, IATC claims "must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. And in *Trevino*, the Court broadened *Martinez* to include cases "where . . . [a] state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. at 429. No binding precedent has addressed whether Mississippi's procedural framework brings it under *Martinez* and *Trevino*. *See Griffith v. Byrd*, No. 2:14-CV-187, 2016 WL 4249960, at *5 (S.D. Miss. June 29, 2016) (assuming without deciding that it does), *report and recommendation adopted*, No. 2:14-CV-187, 2016 WL 4250422 (S.D. Miss. Aug. 10, 2016).

a.  Ground One (a)

Moore alleges an IATC claim for his trial counsel's "fail[ure] to object to blatant subornation of perjury." [1] at 5. He bases his claim on the prosecution's recall of Jimmerson. [12] at 15–16. Jimmerson originally testified—on direct and redirect—that he found Moore inside "the storage room." [10-3] at 14, 22. But the prosecution later recalled Jimmerson,[6] leading to the following exchange:

| | |
|---|---|
| Counsel: | [W]ho was in the house hiding in the closet? |
| Jimmerson: | The suspect, Mr. Corey [Moore], I guess. |
| | .        .        . |
| Counsel: | Did you see any evidence of breaking and entering? |
| Jimmerson: | Yes. |
| Counsel: | How was that? |
| Jimmerson: | When I got Mr. Corey [Moore] out of the closet and he was apprehended—when we finished checking out the house— it's a door across from the storage room door that leads into the house. It had been kicked in. |

Id. at 52–53.

Moore contends that the prosecution recalled Jimmerson and "employ[ed] an impermissible leading question" in a "obvious attempt . . . to suborn perjury." [12] at 15–16. Citing both *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Cronic*, 466 U.S. 648 (1984), Moore argues that trial counsel's "failure to object" to this "obvious, blatant prosecutorial misconduct was so defective that he may as well have been absent." [12] at 15. This procedurally defaulted IATC claim is not substantial because it wholly lacks merit under *Strickland* and *Cronic*.

---

[6] Trial counsel objected to Jimmerson's recall because the prosecution had previously announced its intention to rest. [10-3] at 51. But after the judge explained the prosecution had not formally rested, trial counsel withdrew the objection. *Id.*

Under *Strickland*, Moore must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "A failure to establish either element is fatal to a petitioner's claim." *Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013). Moore's claim in Ground One (a) lacks merit because it fails to establish prejudice. The record, taken as a whole, does not support a "reasonable probability that, but for counsel's [failure to object to Jimmerson's recall testimony], the result of the [trial] would have been different." *Russell*, 68 F.4th at 273. To this point, the Court agrees with the Report's assessment of the record:

> Viewing the statements of Officer Jimmerson and the prosecution in the context of all that was said at trial, it was not the position of either Jimmerson or the prosecution that Moore was found inside the house. The prosecution alleged, the jury believed, and the Mississippi Supreme Court observed that though Moore was found outside the house in a storage room, it could be discerned that he had been inside the house because a door to the home was kicked in, and items belonging to the victim were inside of his mother's truck. It was the role of the jury to resolve conflicts in the statements made at trial.

[15] at 25 (citation omitted); *see also id.* at 22–25 (discussing Jimmerson's testimony). In other words, Moore's "storage room" versus "closet" argument is immaterial considering other uncontroverted evidence. Moore therefore does not raise a substantial *Strickland* claim in Ground One (a).

Nor does he raise a substantial *Cronic* claim. "The Supreme Court's decision in *Cronic* created a very limited exception to the application of *Strickland*'s two-part test in situations that 'are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified.'" *Haynes v. Cain*, 298 F.3d 375, 380 (5th Cir. 2002) (quoting *Cronic*, 466 U.S. at 658). "[U]nder *Cronic*,

18

prejudice is presumed." *Russell*, 68 F.4th at 269. Moore argues *Cronic* governs because trial counsel "fail[ed] to subject the [prosecution's] case to meaningful adversarial testing." [12] at 15. The Court disagrees.

For *Cronic* to apply, defense counsel must "*entirely* fail to subject the prosecution's case to meaningful adversarial testing . . . ." *Haynes*, 298 F.3d at 381. Here, Moore's counsel cross-examined the prosecution's witnesses and in closing argument, challenged the sufficiency of the evidence. *See* [10-3] at 6–10, 15–22, 33–49, 54, 94–97. Trial counsel, at the least, provided "some meaningful assistance," so Moore must show prejudice under *Strickland* to sustain his claim in Ground One (a). *Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000). And as explained above, Moore's claim has no merit under *Strickland*'s prejudice prong.

### b.  Ground One (d)

Ground One (d) raises two jury-instruction-based IATC claims: failure to request a lesser-included-offense instruction and failure to request a circumstantial-evidence instruction. Neither is substantial.

As the Report noted, Moore's counsel did propose "a jury instruction for the lesser included offense of trespass, and the trial judge rejected it." [15] at 28 (citing [10-3] at 67–70). Moore's IATC claim centered on the lesser-included-offense instruction thus fails.

As to counsel's alleged failure to request a circumstantial-evidence instruction, trial counsel did propose a "wholly circumstantial evidence" instruction but withdrew it after concluding that the "case against Moore was not wholly

circumstantial." *Id.* at 29 (citing [10-1] at 46; [10-3] at 74–75). The Court "strongly presume[s]" that decision was made "in the exercise of reasonable professional judgment." *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam). Nothing in the record calls for uprooting that presumption. And even if it did, the claim still fails *Strickland*'s prejudice prong. The Mississippi Supreme Court reviewed Moore's weight of the evidence claim on direct appeal and explained:

> The elements of burglary are (1) breaking and entering the dwelling house or inner door of such dwelling house of another; and (2) with intent to commit some crime therein. The State alleged that Moore broke into the house with the intent to steal items within.
>
> The door to the victim's house had been kicked in and valuable property belonging to the victim and her daughter was found in a vehicle owned by Moore's mother and parked in the driveway. Moore was found hiding in a storage room attached to the victim's house. Little evidence supported the defense theory that Moore was there with permission.

*Moore*, 287 So. 3d at 199 (cleaned up); *see also* [10-4] at 11, 13 (trial photographs). Based on the evidence presented, Moore fails to show a reasonable probability that the outcome of the trial would have been different had counsel not withdrawn the circumstantial-evidence instruction. *Russell*, 68 F.4th at 273.

      c.  Ground Two

Moore cannot rely on *Martinez* and *Trevino* to provide cause for the default of his IAAC claims. *Davila*, 582 U.S. at 528–30. And the Court gleans nothing from the record showing any other "external impediment[]" that prevented Moore from including his IAAC claim in his PCR Motion. *Hughes*, 530 F.3d at 341.

2.   Exhausted IAC Claims

Moore did properly exhaust Grounds One (b), (c), and (e). *See* [10-7] at 183,

187. Though Moore filed a "mixed petition," the Court may deny his exhausted

claims on the merits. *Neville*, 423 F.3d at 482 (citing § 2254(b)(2)). After a thorough

review of the record, the [15] Report, and Moore's [16] Objection, the Court does so.

Moore focuses his objections about competency and trial in absentia on

alleged errors committed by "the various jurist[s] involved in this litigation." [16] at

2. The corresponding claims in his federal habeas petition, however, relate to his

trial counsel's alleged ineffectiveness for not investigating his mental illness,

requesting a competency hearing, and objecting to his trial in absentia. *See* [1] at 5–

6; [12] at 11–14. The Court construes Moore's objections about his competency and

trial in absentia as a challenge to the Report's analysis of Grounds One (b), (c), and

(e). *See Russell*, 68 F.4th at 270 (affording pro se filings "liberal construction").

Moore has exhausted these claims, so the Court applies the AEDPA's deferential

standard of review.

Under the AEDPA, Moore must first clear the "relitigation bar." *Lucio*, 987

F.3d at 465 (citing § 2254(d)). To do so, he must show:

> (1) the state court's "decision" on [his] claim "was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States"; or

> (2) the state court's adjudication of the claim "resulted in a decision that
> was based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding."

*Id.* (citations omitted).

For each claim "governed by [the] AEDPA's relitigation bar," the Court "must identify the relevant state-court 'decision.'" *Id.* (quoting § 2254(d)(1)–(2)). The Court must also determine the "nature" of the habeas claim to decide "which of the[] provisions [in section 2254(d)] governs." *Neal*, 78 F.4th at 783 (categorizing claims as "(1) those presenting questions of law, (2) those presenting questions of fact, and (3) those presenting mixed questions of law and fact").

The Court reviews questions of law under section 2254(d)(1), which prescribes two applicable standards: the "contrary to" standard and the "unreasonable application" standard. *Neal*, 78 F.4th at 783. Moore can only satisfy the "contrary to" standard by showing the state-court decision "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc) (cleaned up). "[A]lmost equally unforgiving," the "unreasonable application" standard requires Moore to "show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 156 (cleaned up).

Claims presenting questions of fact involve a two-step approach under section 2254(d)(2) and (e)(1). *Neal*, 78 F.4th at 783. First, the Court "applies [s]ection 2254(e)(1)'s rebuttable presumption of correctness to each disputed factual determination by the state court." *Id.* This presumption extends to both express and implicit findings, and the petitioner has the burden of rebutting the presumption

with clear and convincing evidence. *See Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018). Next, the Court reviews the state court's decision by "consider[ing] the entire factual basis and utiliz[ing] the reasonableness standard from [s]ection 2254(d)(2)" to determine whether the petitioner has satisfied the provision. *Neal*, 78 F.4th at 783.

For "[c]laims presenting mixed questions of law and fact," the Court reviews "a state court's ultimate legal conclusion . . . under [s]ection 2254(d)(1), [and it reviews] the underlying factual findings supporting that conclusion . . . under [s]ection[] 2254(d)(2) and (e)(1)." *Id.* (citing *Austin v. Davis*, 876 F.3d 757, 782–84 (5th Cir. 2017)).

Finally, "[o]vercoming [the] AEDPA's relitigation bar is necessary but not sufficient to win habeas relief." *Langley*, 926 F.3d at 156. That is, even if Moore satisfies one of the two exceptions in section 2254(d), he must still "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting § 2254(a)).

The Mississippi Supreme Court summarily denied Moore's PCR Motion. [9-4]. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (quoting *Harrington v. Richter*, 582 U.S. 86, 98 (2011)). Accordingly, the Court must determine "what arguments or theories . . . could have supported the state court's

decision and then ask whether fairminded jurists could conclude that those arguments and theories are consistent with the Supreme Court's relevant teachings." *Id.* (cleaned up).

With that framework in place, the Court turns to Moore's exhausted *Strickland* claims—Grounds One (b), (c), and (e)—which all fail to clear the AEDPA's relitigation bar.

Moore's exhausted *Strickland* claims all turn on questions about his competency to stand trial. Specifically, Moore points to trial counsel's failure to investigate his mental illness and past hospitalizations, failure to request a competency hearing, and failure to challenge Moore's trial in absentia considering the uncertainty about Moore's competency. [1] at 5; *see also* [12] at 11–14. Given the lack of explanation, the Court cannot say which *Strickland* prong the Mississippi Supreme Court found unsatisfied. *See* [9-4]. For purposes of this Order, however, the prejudice prong is dispositive. To establish prejudice, Moore must show a "'reasonable probability' that he was incompetent, 'sufficient to undermine confidence in the outcome'" of the trial. *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990) (quoting *Strickland*, 466 U.S. at 694). And he must show that conclusion is not subject to "any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.[7]

---

[7] The Court's choice not to fully address *Strickland*'s first prong—deficient performance—should not be read to imply that the Court believes counsel's total failure to conduct a pretrial investigation into Moore's competency was objectively reasonable under the circumstances. After counsel was appointed to represent Moore in May 2015, he spoke with Moore on the phone a few times to arrange a meeting. [10-1] at 3; [10-2] at 18. The meeting never happened because Moore "always had a reason for not meeting [him.]" [10-2]

"The Constitution does not permit trial of an individual who lacks mental competency." *Austin*, 876 F.3d at 777 (cleaned up). "A defendant is competent to stand trial if he has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and if] he has a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). "A defendant can be both mentally ill and competent to stand trial." *Mays v. Stephens*, 757 F.3d 211, 216 (5th Cir. 2014). Medical diagnoses "do not necessarily demonstrate a lack of rational understanding of the proceedings or an inability to consult with counsel." *Zimmerman v. Cockrell*, 69 F. App'x 658, 2003 WL 21356018, at *6 (5th Cir. 2003) (unpublished table decision) (per curiam).

The burden of evidentiary proof is lower for a *Strickland*-based competency claim than for a competency-in-fact claim. A petitioner must show incompetency in fact by a preponderance of the evidence. *See Washington v. Johnson*, 90 F.3d 945, 950 (5th Cir. 1998). Under *Strickland*, a petitioner "need only demonstrate a 'reasonable probability' that he was incompetent." *Bouchillon*, 907 F.2d at 595

---

at 18. Counsel knew in early 2016 that Moore had been hospitalized at the VA for psychiatric conditions. *See id.* at 18, 138–39. A year and a half passed between counsel learning of Moore's hospitalization and Moore's trial, but counsel never made even a cursory investigation into the matter.

And even after Teague remarked in open court that Moore was "not stable at all" and was "not in his right mind," counsel all but stipulated to Moore's competency after being invited by the trial judge to comment on his failure to move for a mental exam. *See id.* at 136–39. He did so based on a couple phone conversations (before learning of Moore's hospitalization) and one voicemail Moore left in early 2016 about getting his own lawyer. *See id.* at 13–19, 138–40. To be sure, courts have found similar performances constitutionally deficient. *See, e.g.*, *Bouchillon*, 907 F.2d at 595–97; *Hummel v. Rosemeyer*, 564 F.3d 290, 299–303 (3d Cir. 2009).

(quoting *Strickland*, 466 U.S. at 694). The difference between the two standards is "slight and matters 'only in the rarest case.'" *United States v. Israel*, 838 F. App'x 856, 867 (5th Cir. 2020) (per curiam) (quoting *Harrington*, 562 U.S. at 112).

*Strickland*'s prejudice inquiry is a mixed question of law and fact. *See Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). Here, Moore's competency is a question of fact entitled to deference under section 2254(e)(1). *Austin*, 876 F.3d at 779. In considering Moore's contention on direct appeal that the trial court, sua sponte, should have ordered a competency hearing, the Mississippi Supreme Court made several factual findings about Moore's competency:

> The record . . . show[s] that Moore was diagnosed with and treated for PTSD, and, when speaking to the trial court, he referenced taking medication. Teague, the attorney Moore tried to hire, related secondhand accounts about Moore's condition and treatment, then added that, apparently based on her conversation with Moore the day of his trial, he might be dangerous and was "not in his right mind."
>
> .    .    .
>
> Moore appeared in court and spoke with the trial judge. So far as the record reveals, Moore was rational and coherent; the trial judge observed his behavior. And at the sentencing hearing, Moore himself attributed his conduct to drug and alcohol abuse rather than mental illness or incapacity per se. He further articulated a coherent theory of defense and was cogent enough to interject and to argue with the judge about whether he was actually inside the house when he was caught. And despite their limited contact before trial, Lockhart, Moore's attorney, knew Moore's theory of the defense and brought out facts at trial to support it. . . . Moore himself has never claimed to have been hospitalized during the trial, nor has his counsel made that claim in arguments at trial or on appeal. Instead, Moore attributed his conduct to drugs and alcohol, and Moore said he went into substance-abuse treatment "on the 7th of August." That was about two months *after* the trial, which was held the first week of June [2017].

*See Moore*, 287 So. 3d at 196–97 (footnote omitted). The court concluded that "no reasonable basis existed to question whether Moore was competent to stand trial."

26

*Id.* at 198. These factual determinations about Moore's competency are "presumed to be correct." § 2254(e)(1); *see also Austin*, 876 F.3d at 778–79.[8]

In his PCR Motion, Moore offered evidence that his November 2017 diagnosis noted "psychotic symptoms." [10-7] at 159. He highlighted that the same doctor that treated him at the VA before trial also treated him after trial. *See id.* at 148–59, 199–201. And he argues that Teague's comments, coupled with his irrational decision to leave trial, shows that he had "lost touch with reality" at the time of trial, a common symptom of psychosis. *See id.* at 155; *see also* [12] at 12 (citing *Anderson v. Gipson*, 902 F.3d 1126, 1134–35 (9th Cir. 2018)).

The Mississippi Supreme Court concluded that Moore did not make a "substantial showing of the denial of a state or federal right." [9-4]. Under the AEDPA, this Court is allowed only one question about that conclusion: Does Moore establish that no fairminded jurist could reach it? *See Harrington*, 562 U.S. at 101–02. The answer is no. Considering the factual findings that Moore was rational, coherent, and able to articulate his theory of the case on the day of trial, fairminded jurists could (and did) debate Moore's competency. *See Moore*, 287 So. 3d at 196–98; *compare id.* at 198 ("No reasonable basis existed to question whether Moore was competent to stand trial."), *with id.* at 201 (Kitchens, P.J., dissenting) ("I would find that the information before the trial court, objectively considered, reasonably should have raised a doubt about Moore's mental competency to stand trial."). Therefore,

---

[8] Section 2254(e)(1) applies to these findings even though the court, on direct appeal, was considering a different claim than the one Moore brings in his federal habeas petition. *See Austin*, 876 F.3d at 778 & n.196.

the Mississippi Supreme Court did not unreasonably apply clearly established federal law in concluding that Moore failed to demonstrate a reasonable probability of being incompetent to stand trial. *See* § 2254(d)(1).[9]

### B. Grounds Three and Four: Subornation-of-Perjury Claims

Moore exhausted Grounds Three and Four. *See* [10-7] at 18, 203–04, 248–56. Even so, they lack merit. In Ground Three, Moore claims that the prosecution violated his due-process rights by allegedly suborning perjury. [1] at 8. In Ground Four, Moore claims that the state court committed plain error by not correcting the subornation of perjury or giving lesser-included and circumstantial-evidence jury instructions. *Id.* at 11. The Magistrate Judge's Report recommended the dismissal of both grounds with prejudice. [15] at 25. Moore objects to the [15] Report's conclusion, arguing that "'[t]he Magistrate Judge overruled' the evidence, as well as the state's theory of guilt, in ignoring an obvious subornation of perjury." [16] at 3. The Court liberally construes this objection as challenging the [15] Report's findings of fact and conclusions of law related to Moore's subornation-of-perjury claims and reviews Grounds Three and Four de novo under the AEDPA's deferential strictures.[10] Both grounds are meritless.

---

[9] Moore's *Strickland* claim for failure to object to trial in absentia fails for all these same reasons. That claim hinged on Moore showing a reasonable probability that, because of his lack of competency, he could not have intentionally waived his right to be present. If the state court's decision on the competency claims should be left undisturbed, so too should its decision on the trial-in-absentia claim.

[10] Though Ground Four alleges that the state court committed plain error in failing to give Moore's requested jury instructions, plain-error review does not apply to collateral attacks on the constitutionality of final convictions. *Hernandez v. Thaler*, 440 F. App'x 409, 414–15 (5th Cir. 2011). The Court liberally construes Ground Four as a due-process

1.   Ground Three

The Fourteenth Amendment's Due Process Clause prohibits a state from
knowingly using or failing to correct perjured testimony. *Napue v. Illinois*, 360 U.S.
264, 269 (1959). A witness commits perjury by giving "false testimony concerning a
material matter with the willful intent to provide false testimony, rather than as a
result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507
U.S. 87, 94 (1993). Establishing perjury requires a habeas petitioner to show that
(1) the testimony was false; (2) it was material; and (3) the prosecution knew it was
false. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). Testimony is false
when it is specific, misleading, and important to the prosecution's case. *Id.* Perjured
testimony is material only if it has a reasonable likelihood of affecting the jury's
verdict. *Id.* Mere inconsistencies or conflicts in a witness's testimony are for the jury
to resolve and do not, by themselves, demonstrate perjury. *Koch v. Puckett*, 907
F.2d 524, 531 (5th Cir. 1990). The materiality of false testimony is a mixed question
of law and fact. *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997).

Presented with Moore's PCR Motion, the Mississippi Supreme Court found
that Moore's subornation-of-perjury argument did not make a substantial showing
of the denial of a federal right. [9-4]. Moore has failed to demonstrate that no
fairminded jurist could reach that conclusion because he has not shown the falsity
or materiality required to establish perjury. The crux of Moore's argument is that
Jimmerson had testified repeatedly on direct examination to finding him outside in

---

challenge to the state court's failure to give Moore's requested jury instructions, and it
considers Grounds Three and Four under the standard given in section 2254(d).

a storage shed but later contradicted this testimony on recall when the prosecution asked, "[W]ho was in the house hiding in the closet?" and Jimmerson responded, "The suspect, Mr. Corey [Moore], I guess." *See* [12] at 15 (quoting [10-3] at 52). According to Moore, the prosecution used "an impermissible leading question"[11] to suborn perjury here because this testimony implied that Jimmerson found Moore in a closet inside McGee's home. *See id.* at 15–16.

Moore, however, has not shown that any inconsistencies in Jimmerson's testimony resulted from an intent to provide false testimony rather than mistake or confusion. At trial, the witnesses and attorneys were loose with their terminology and referred to the place where Jimmerson found Moore by several different terms. *See, e.g.*, [10-3] at 12–14, 19, 22, 53 (storage room); *id.* at 19, 52–54, 98 (closet); [10-2] at 151 (closet); [10-3] at 41, 60 (storage shed); *id.* at 15 (storage area); *see also* [15] at 22–24. Moore conflates inconsistency with falsity. The fact that the prosecution and Jimmerson did not mechanically refer to the storage room in the same way every time does not demonstrate that they intended to mislead the jury about where Moore was found. In fact, the prosecution introduced photographs of McGee's home and the storage room during Jimmerson's direct examination:

Prosecutor:   Officer, what is this a picture of?

---

[11] The Mississippi Rules of Evidence state that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." Miss. R. Evid. 611(c). A federal habeas court defers to a state court's application of state law. *Woodfox v. Cain*, 609 F.3d 774, 816 (5th Cir. 2010). The state court had discretion to control the types of questions used at trial. Miss. R. Evid. 611(a). Whether the prosecution's question was impermissible was a state-law issue for the state court to decide.

> Jimmerson: That's a picture of the SUV that was in the driveway of Ms. [McGee]'s home.
>
> Prosecutor: And can you see the area where [Moore] was hiding in this picture?
>
> Jimmerson: If you look to the right, the far right—yeah, right there—that's a door. That's where the storage room is, and that's where he was inside.

[10-3] at 14; *see also* [10-4] at 11. Despite using imprecise or possibly mistaken language at times, the prosecution showed the jury the storage room's location, and the prosecution never argued that Moore was found anywhere but that location. The Mississippi Supreme Court could have fairly determined that any perceived inconsistencies between Jimmerson's testimony and other evidence did not show perjury but created a credibility issue for the jury to resolve.

Additionally, Mississippi's burglary statute provides that "[e]very building joined to, immediately connected with, or being part of the dwelling house, shall be deemed the dwelling house." Miss. Code Ann. § 97-17-31. The Mississippi Supreme Court concluded that "Moore was found hiding in a storage room attached to [McGee]'s house." *Moore*, 287 So. 3d at 199; *see also id.* at 197 n.2. Under section 2254(e)(1), these factual findings are entitled to a presumption of correctness, and Moore has not rebutted this presumption by clear and convincing evidence. While Moore argues that "[t]he storage shed here is a detached structure that sits about 40 feet from the house," he has produced no evidence to carry his burden of rebutting section 2254(e)(1)'s presumption of correctness. [12] at 2; [10-4] at 11. Since the Mississippi Supreme Court found that the storage room was

attached to McGee's house, it could have reasonably decided that any statements implying Moore was "in the house" were not false.

Even if Moore could show falsity, he cannot establish materiality. The prosecution introduced evidence that Jimmerson found Moore in McGee's storage room (next to her home), a door to McGee's home was kicked in, and items from McGee's home were in a car belonging to Moore's mother. *See Moore*, 287 So. 3d at 199. Given the evidence against Moore, the trial judge rejected Moore's proposed jury instructions, and the jury could have reasonably inferred that Moore broke into McGee's house, took her property, placed it in his mother's car, and hid in the storage room when Jimmerson arrived. From this, the Mississippi Supreme Court may have fairmindedly concluded there was no reasonable likelihood that Jimmerson's single statement about Moore being "in the house hiding in the closet" could have changed the jury's verdict. [10-3] at 52. As a result, the Mississippi Supreme Court did not unreasonably apply clearly established federal law by rejecting Moore's subornation-of-perjury claims.

2.   Ground Four

Improper jury instructions in state criminal trials rarely provide grounds for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). A petitioner must show "prejudice of constitutional magnitude." *Id.* (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)). The failure to give a jury instruction must "so infect[] the entire trial that the resulting conviction violates due process." *Id.* at 764–65 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). If

an erroneous jury instruction was harmless—that is, it did not have a "substantial and injurious effect or influence in determining the jury's verdict"—habeas relief is unwarranted. *Id.* at 765 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623–24 (1993)). In a non-capital case, failure to give a lesser-included-offense or circumstantial-evidence instruction does not implicate a federal constitutional right. *See Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *see also Wallace v. Banks*, No. 3:15-CV-669, 2018 WL 3852624, at *4 (S.D. Miss. July 9, 2018), *report and recommendation adopted*, No. 3:16-CV-669, 2018 WL 3846324 (S.D. Miss. Aug. 13, 2018). Absent a constitutional violation, a federal habeas court defers to a state court's interpretation of its own law on whether a jury instruction is appropriate. *See Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998).

Here, the trial court interpreted Mississippi law to reject both of Moore's requested jury instructions. The Mississippi Supreme Court implicitly agreed with the trial court, finding Moore's PCR Motion did not make a substantial showing of the denial of a state or federal right. [9-4]. A fairminded jurist could reach this conclusion. The Court may not reexamine whether the failure to give the requested instructions denied Moore a state-law right, so it considers only if Moore was denied a federal right. In this non-capital case, Moore did not have a federal due-process right to a lesser-included-offense or circumstantial-evidence instruction. Since Moore did not have a federal right to either jury instruction, the Mississippi Supreme Court did not unreasonably apply clearly established federal law by

holding that Moore's jury-instruction arguments did not demonstrate the denial of a federal right.

C.  Evidentiary Hearing

Lastly, the Court turns to Moore's renewed request for an evidentiary hearing to "establish that witness Jimmerson's falsehood negated any chance Moore had to be adjudicated under a 'burglary of a non-dwelling' charge, or a theft charge . . . ." [16] at 6; *see also* [12] at 28–29. It, too, is meritless. The AEDPA bars evidentiary hearings in federal habeas proceedings in all but extraordinary cases. *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022). Moore's subornation-of-perjury claims were decided on the merits in state court, and he has not cleared section 2254(d)'s relitigation bar; thus, he may not obtain an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).

A petitioner is only entitled to an evidentiary hearing upon showing that (1) the state failed to provide a full and fair hearing; (2) the allegations of the petition, if true, would entitle the petitioner to relief; and (3) the petitioner's claim clears the relitigation bar in section 2254(d). *See Blue v. Thaler*, 665 F.3d 647, 655–56 (5th Cir. 2011). The relitigation bar applies when a claim is "adjudicated on the merits in State court proceedings." § 2254(d). A claim is adjudicated on the merits when a state court "reache[s] the merits of the petitioner's claim rather than deciding it on procedural grounds." *Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 472 (5th Cir. 2023) (per curiam) (cleaned up); *see also Pinholster*, 563 U.S. at 187 (noting that even a summary denial operates as an adjudication on the merits). In such cases,

the petitioner must show—solely based on the state-court record—that

section 2254(d) does not bar habeas relief. *Broadnax v. Lumpkin*, 987 F.3d 400,

406–07 (5th Cir. 2021). If the petitioner can make that showing and the district

court finds the hearing warranted by the record, then the Court "may entertain new

evidence pursuant to the limitations of [section] 2254(e)(2)." *Id.*; *Richards v.*

*Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009).

Here, the Court may not grant Moore's request for an evidentiary hearing on

his subornation-of-perjury claims because they do not clear section 2254(d)'s

relitigation bar. Moore presented his subornation-of-perjury claims to the

Mississippi Supreme Court in his PCR Motion. *See* [10-7] at 18, 203–04, 248–56.

Though that court summarily denied the PCR Motion, the summary denial was on

the merits. *See* [9-4]; *Pinholster*, 563 U.S. at 187. This Court cannot entertain new

evidence about Moore's claims unless Moore shows that the Mississippi Supreme

Court's decision is not entitled to deference under section 2254(d). He has not shown

from the state-court record that the Mississippi Supreme Court unreasonably

applied clearly established federal law. Moore is therefore not entitled to an

evidentiary hearing on his claims.

IV.   Conclusion

For these reasons, the Court OVERRULES Moore's [16] Objection, ADOPTS

the Magistrate Judge's [15] Report, and DISMISSES Moore's [1] Petition with

prejudice. In doing so, the Court has considered all the parties' arguments. Those

arguments not addressed would not have altered the Court's decision. The Court will enter a separate final judgment consistent with this Order.

SO ORDERED, this 16th day of September, 2024.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE